(715 P.2d 425)

No. 57,486

SAMUEL TURNER, *Appellant,* v. HERB MASCHNER, *Appellee.*

Opinion filed March 20, 1986.

*David C. Van Parys,* of Murray & Tillotson, Chartered, of Leavenworth, for appellant.

*Larry Cowger,* special assistant attorney general, and *Robert T. Stephan,* attorney general, for appellee.

Before REES, P.J., C. FRED LORENTZ, District Judge, assigned, and JOHN W. BROOKENS, District Judge Retired, assigned.

REES, J.: Petitioner Samuel Turner appeals the denial of his petition for a writ of habeas corpus (K.S.A. 60-1501), in which he alleged that the conditions surrounding his incarceration constitute cruel and unusual punishment. Specifically, petitioner contends that because of his segregated confinement in the Administrative Treatment and Segregation Unit (A&T), his opportunities for education, group religious services, employment services and vocational training and exercise are impermissibly restricted. We affirm.

The infliction of "cruel and unusual punishment" is constitutionally prohibited by both the United States Constitution and the Kansas Constitution. U. S. Const. amend. VIII; Kansas Const. Bill of Rights, § 9; *Levier v. State,* 209 Kan. 442, 445, 497 P.2d 265 (1972). This phrase has been interpreted as being punishment which "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." *Rhodes v. Chapman,* 452 U.S. 337, 348, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981). Kansas has defined cruel and unusual punishment as involving a deprivation which is inhumane, barbarous, or shocking to the conscience. *State v. Rouse,* 229 Kan. 600, 605, 629 P.2d 167 (1981).

Segregated confinement, in itself, does not constitute cruel and unusual punishment. See *Levier v. State*, 209 Kan. 442; Annot., 51 A.L.R.3d 163. Further, prison officials are vested with wide discretion and before courts will interfere with the administration of prisons, the treatment must be "of such a nature as to clearly infringe upon constitutional rights, be of such character or consequence as to shock general conscience or be intolerable in fundamental fairness." 209 Kan. at 451. See also *Wright v. Raines*, 1 Kan. App. 2d 494, 499, 571 P.2d 26, *rev. denied* 222 Kan. 749 (1977), *cert. denied* 435 U.S. 933 (1978).

Petitioner argues that his confinement in a building without windows constitutes cruel and unusual punishment. It has been held that the rights of an inmate "include entitlement to adequate food, *light,* clothing, medical care and treatment, sanitary facilities, reasonable opportunity for physical exercise and protection against physical or psychological abuse or unnecessary indignity." (Emphasis added.) *Levier v. State*, 209 Kan. at 448. Adequate light is not, however, synonymous with outside light, or windows. The denial of a light bulb in an inmate's cell has been held not to constitute cruel and unusual punishment. *State v. Rouse*, 229 Kan. at 605.

We therefore hold that petitioner's confinement in a building which lacks windows is not of the character which would shock the general conscience or be intolerable in fundamental fairness under the standard set out in *Levier v. State*, 209 Kan. at 451.

Petitioner next complains that he has been denied group religious services. Relying on *LaReau v. MacDougall*, 473 F.2d 974, 979 (2d Cir. 1972), *cert. denied* 414 U.S. 878 (1973), petitioner argues that substantial justification must be given to prohibit him from participating in group religious services.

In *LaReau v. MacDougall*, the court held that denying unruly prisoners access to the chapel for Sunday Mass was not a violation of their First Amendment rights and that security reasons were substantial justification for denying *group* religious services. While it appears no Kansas case has addressed the question of whether such a preclusion constitutes cruel and unusual punishment, several other jurisdictions have held generally that it is not improper to preclude an inmate from *group* religious services. See *Otey v. Best*, 680 F.2d 1231 (8th Cir. 1982); *Mawhinney v. Henderson*, 542 F.2d 1 (2nd Cir. 1976); *Sweet v.*

*South Carolina Dept. of Corrections*, 529 F.2d 854 (4th Cir. 1975). Petitioner has not been denied individual religious activity.

Further, in referring to a prisoner's First Amendment protections while incarcerated, the United States Supreme Court repeated the familiar proposition that " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Pell v. Procunier*, 417 U.S. 817, 822, 41 L. Ed. 2d 495, 94 S. Ct. 2800 (1974), quoting *Price v. Johnston*, 334 U.S. 266, 285, 92 L. Ed. 1356, 68 S. Ct. 1049 (1948), and citing *Cruz v. Beto*, 405 U.S. 319, 321, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972). In the present case, given petitioner's conviction for an assault and battery on a staff member at the penitentiary, the trial court was correct in finding that the prison administration did not act arbitrarily in precluding petitioner from group religious services.

As for petitioner's complaint about restricted vocational opportunities, under *Levier v. State*, 209 Kan. 442, courts will not review the prison administration's decision to place petitioner in the A&T building as a result of assault and battery convictions. It is not intolerable to fundamental fairness, nor does it shock the general conscience, for the administration to preclude petitioner from vocational programs which are available only outside the A&T building. Likewise it is not cruel and unusual punishment to preclude petitioner from obtaining employment within the A&T building, given his conviction.

Further, K.S.A. 75-5211 provides the secretary of corrections with discretion in providing employment opportunities. *Foster v. Maynard*, 222 Kan. 506, 514, 565 P.2d 285 (1977). K.S.A. 75-5211 provides in relevant part: "(a) The secretary of corrections shall provide employment opportunities, work experiences, educational or vocational training for *all inmates capable of benefiting therefrom*." (Emphasis added.) Such discretion is consistent "with the legislative intent to leave the internal management and operation of the state correctional system to the sound discretion of the Secretary." *Foster v. Maynard*, 222 Kan. at 514. Petitioner's complaint fails.

Petitioner contends next that his petition for a writ of habeas corpus should have been granted because he was denied educa-

tional and self-help programs. The State, however, presented uncontradicted evidence that petitioner had never requested such services or benefits and that, if he had, they would have been provided to him. We see no error in the trial court's holding that the failure to provide unrequested educational services was not improper.

In conclusion, there is substantial competent evidence to uphold the district court's decision. The conditions under which petitioner is incarcerated do not constitute cruel and unusual punishment when considered individually or when considered in the aggregate.

Affirmed.